Erik J. Farfan SID# 18059264
TRCI
82911 Beach Access Rd.
Umatilla, OR. 97882

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ERIK Jovanny. FARFAN

    PLAINTIFF,

V.

WARREN ROBERTS; MEDICAL DIRECTOR
CHARLES COX; NURSE MANAGER
P. MANEY; NURSE PRACTITIONER
TLC COMMITTEE BOARD, ET AL

    DEFENDANTS.

Case No: 2:26-cv-00523-AB _____

28 U.S.C. 1983
Civil Rights Complaint

Jury Trial Demanded
Verified Complaint

COMES NOW, Erik J. Farfan #18059264, Plaintiff pro se, who presents the following civil-rights complaint and claim for compensatory, declaratory, declaratory, injunctive, and punitive damages relief as follows:

## I. INTRODUCTION

1. This is a Civil Rights action concerning the defendant's deliberate indifference to serious medical needs of a prisoner while incarcerated by defendant Oregon Department of Corrections

(ODOC). Erik J. Farfan suffers from End Stage Kidney Failure. Medical staff were aware of his condition.

2. This complaint alleges that adequate medical care has been and is been refused to the plaintiff Erik J. Farfan by the Two Rivers Correctional Institution (TRCI) ODOC, and the facilities resident's physician, Medical director, TLC COMMITTEE BOARD, and Medical Supervisors.

## II. PARTIES

3. ERIK FARFAN #18059264 (Plaintiff) is presently serving a criminal sentence in the custody of The Oregon Department of Corrections. At all times relevant to this action, plaintiff was house at TRCI, 82911 Beach Access Road, Umatilla OR. 97882, where he currently resides.

4. Defendant CHARLES COX, Nurse Manager, at all times relevant to this action was/is employed by NAPHCARE contracted by the Oregon Department of Corrections 82911 Beach Access Road, Umatilla, OR, 97882. At all times Charles Cox acted under the color of state law. He is hereby sued in his individual as well as official capacity, jointly and severally, for the those acts and omissions described fully below.

5. Defendant P. MANEY, Nurse Practitioner, TRCI, at all times relevant to this action was/is employed by the Oregon Department of Corrections 82911 Beach Access Road, Umatilla, OR, 97882. Charged the duty of providing professional medical services of a General Practitioner to the inmate population. At all times relevant to this complaint, P. Maney, NP, acted under the color of state law. He is hereby sued in his individual as well as official capacity, jointly and severally, for the those acts and omissions described fully below.

6. Defendant WARREN ROBERTS, Medical Director, at all times relevant to this action was/is employed by the Oregon Department of Corrections responsible for the medical care of inmates. At all times relevant to this complaint, Medical Director Warren Roberts acted under the color of state law. He is hereby sued in his individual as well as official capacity, jointly and severally, for the those acts and omissions described fully below.

7. TLC COMMITTEE BOARD, ET AL (ODOC) At all times relevant to this complaint, TLC COM MITTEE BOARD members acted under the color of state law. They are hereby sued in their individual as well as official capacity, jointly and severally, for the those acts and omissions described fully below.

8. Doctor Beamor, TLC COMMITTEE BOARD, ET AL (ODOC). At all times relevant to this complaint, TLC COMMITTEE BOARD members acted under the color of state law. They are

hereby sued in their individual as well as official capacity, jointly and severally, for the those acts and omissions described fully below.

9. Davies, TLC COMMITTEE BOARD, ET AL (ODOC) At all times relevant to this complaint, TLC COMMITTEE BOARD members acted under the color of state law. They are hereby sued in their individual as well as official capacity, jointly and severally, for the those acts and omissions described fully below.

10. Drollinger, TLC COMMITTEE BOARD, ET AL (ODOC) At all times relevant to this complaint, TLC COMMITTEE BOARD members acted under the color of state law. They are hereby sued in their individual as well as official capacity, jointly and severally, for the those acts and omissions described fully below.

11. Doctor Evers, TLC COMMITTEE BOARD, ET AL (ODOC) At all times relevant to this complaint, TLC COMMITTEE BOARD members acted under the color of state law. They are hereby sued in their individual as well as official capacity, jointly and severally, for the those acts and omissions described fully below.

12. Patrick Maney, NP TLC COMMITTEE BOARD, ET AL (ODOC) At all times relevant to this complaint, TLC COMMITTEE BOARD members acted under the color of state law. They are hereby sued in their individual as well as official capacity, jointly and severally, for the those acts and omissions described fully below.

13. Meying, TLC COMMITTEE BOARD, ET AL (ODOC) At all times relevant to this complaint, TLC COMMITTEE BOARD members acted under the color of state law. They are hereby sued in their individual as well as official capacity, jointly and severally, for the those acts and omissions described fully below.

14. Peh, TLC COMMITTEE BOARD, ET AL (ODOC). At all times relevant to this complaint, TLC COMMITTEE BOARD members acted under the color of state law. They are hereby sued in their individual as well as official capacity, jointly and severally, for the those acts and omissions described fully below.

15. Doctor Bristol, TLC COMMITTEE BOARD, ET AL (ODOC). At all times relevant to this complaint, TLC COMMITTEE BOARD members acted under the color of state law. They are hereby sued in their individual as well as official capacity, jointly and severally, for the those acts and omissions described fully below.

16. Bailey, TLC COMMITTEE BOARD, ET AL (ODOC). At all times relevant to this complaint, TLC COMMITTEE BOARD members acted under the color of state law. They are hereby sued in their individual as well as official capacity, jointly and severally, for the those acts and omissions described fully below.

17. White, TLC COMMITTEE BOARD, ET AL (ODOC). At all times relevant to this complaint, TLC COMMITTEE BOARD members acted under the color of state law. They are hereby sued in their individual as well as official capacity, jointly and severally, for the those acts and omissions described fully below.

18. Doctor Dornbusch, TLC COMMITTEE BOARD, ET AL (ODOC). At all times relevant to this complaint, TLC COMMITTEE BOARD members acted under the color of state law. They are hereby sued in their individual as well as official capacity, jointly and severally, for the those acts and omissions described fully below.

19. Pinkham, TLC COMMITTEE BOARD, ET AL (ODOC). At all times relevant to this complaint, TLC COMMITTEE BOARD members acted under the color of state law. They are hereby sued in their individual as well as official capacity, jointly and severally, for the those acts and omissions described fully below.

20. R. Owens TRCI, at all times relevant to this action was/is employed by the Oregon Department of Corrections 82911 Beach Access Road, Umatilla, OR, 97882. Charged the duty of providing professional medical services to the inmate population. At all times relevant to this complaint, R. Owens, acted under the color of state law. He is hereby sued in his individual as well as official capacity, jointly and severally, for the those acts and omissions described fully below.

21. Jurisdiction is asserted pursuant to the United States Constitution and 42 U.S.C. § 1983, to redress the deprivation of those rights secured by the United States Constitution, deprived by persons acting under the color of state law. The Court has jurisdiction over these matters pursuant to 28 U.S.C. §§1331,1343.

Plaintiff's claim for injunctive relief is authorized pursuant to 28 U.S.C. §1651.

22. The United States District Court for the District of Portland, in the City of Portland, is the appropriate venue for trial pursuant to 28 U.S.C. § 1391(b)(2); the County of Umatilla is where the events complained of have occurred.

## III. PREVIOUS LAWSUITS

23. Erik J. Farfan has an ongoing civil suit in the United States District Court of Oregon (2:24-cv-01813-MTK) for matters of litigation not pertaining to the issues complained of in this civil action.

## IV. STATEMENT OF FACTS

24. Erik J. Farfan has End Stage Kidney Failure and has been a dialysis patient at the TWO RIVERS CORRECTIONAL INSTITUTION (TRCI) since March 2020.

25. Plaintiff requested transplant consideration from his nephrologist and Kidney specialist, Dr. Seth Thaler, after seeing another dialysis patient at TRCI receive Kidney transplant testing and transplant.

26. Plaintiff was told by Dr. Seth Thaler that he would write a physician's order (see exhibit 1) to be referred to OHSU Transplant Program.

27. On January,23,2021(see Exhibit1) Dr. Seth Thaler wrote in plaintiff medical file that he be referred, again on December,13,2022(see Exhibit2) Dr. Seth Thaler wrote in plaintiff medical file that he be referred, and on June,13,2023(see Exhibit3) Dr. Seth Thaler ask for an update transplant status at OHSU.

28. Plaintiff should have seen the provider, Mr. Patrick Maney, shortly after these orders were written, but was not seen.

29. Plaintiff did not see a provider right after all this Orders to OHSU were written as is the policy of ODOC.

30. For nearly a year after Dr. Seth Thaler wrote the order Plaintiff was not seen because Patrick Maney forgot the order was written. Patrick Maney signed off the orders but never presented it to the TLC BOARD until February,14,2023 (as Plaintiff Medical file will indicate).

31. Plaintiff was curious why the transplant testing was not beginning so plaintiff asked his Doctor, Seth Thaler, in his monthly visits why there was not any progress forward.

32. Plaintiff was informed and instructed by Nurse Charles Cox and his Doctor Seth Thaler that Plaintiff should use the grievance process.

33. Plaintiff upon viewing his medical file seen Patrick Maney delayed presenting Dr. Seth

Thaler referral to the OHSU Transplant Program.

34. Plaintiff, before filing a grievance, wrote Patrick Maney a communication form (KYTE) stating that it has been over three (3) years with NO progress towards the Transplant testing (see exhibit 6).

35. Plaintiff did not receive a response from Patrick Maney to his KYTE as to why Patrick Maney was delaying his referral to OHSU instead some other RN (Register Nurse) answer my KYTE (see exhibit 6), so Plaintiff filed an institutional grievance.

36. Plaintiff filed the grievance on May,2,2024(SEE EXHIBIT 4) complaining that there had been a year-long delay of Plaintiff's physician's order to the transplant program at OHSU.

37. On May,29,2024 Plaintiff received a response from Nurse Manager R. Owens at TRCI medical stating that ''You have an order to be referred to the OHSU kidney transplant list. Currently your Kidney disease is being treated. Dialysis is a suitable alternative for kidney transplant.'' (see Exhibit5).

38. Plaintiff explain to Dr. Seth Thaler that this is the response he received to which Dr. Seth Thaler responded that OHSU could not issue any orders if OHSU does not have plaintiff's transplant referral presented to them.

39. Plaintiff being confused as to why the physician's order was being delayed for over TWO (2) years wrote a GRIEVANCE APPEAL FORM ON 6/3/2024(see exhibit6).

40. Plaintiff received a response from Medical Director Warren Roberts that; ''…there would be an appointment scheduled with the provider to discuss your plan of care… ''

41. Plaintiff had been told by Nurse Manager R. Owens that there would be testing once orders were received from OHSU Transplant Team but Plaintiff could not understand how OHSU Transplant Team could know of a transplant order if there was no TRCI/ODOC official communication with OHSU that plaintiff needed the testing.

42. Plaintiff was told by Warren Roberts that there be scheduled meeting with Patrick Maney, NP.

43. Plaintiff never got that meeting with Patrick Maney.

44. Plaintiff filed his last grievance regarding this issue on 7-22-2024(see exhibit7)

45. Defendant DELAYED and DENIED a doctor's order for a surgical procedure that is a nephrologist preferred treatment in cases like plaintiffs.

46. Continuing on dialysis as ODOC TLC Board recommends is easier and Efficacious and constitutes Deliberate Indifference.

47. The provision of "easier less efficacious treatment refers to treating an inmate's medical condition with a simpler, yet LESS EFFECTIVE remedy, when a more a complex, more effective remedy is available".

48. Many of the critical decisions are made by one person: Dr. Warren Roberts, chief of medicine for the Oregon Department of Corrections. Though the TLC is ostensibly a committee, members typically present cases to Roberts, who solely determine whether an inmate is WORTHY or UNWORTHY of treatment, according to a TLC member.

49. Warren Roberts is named in other current on-going lawsuit claiming inadequate health care and inadequate treatment and claiming deliberate indifference against Warren Roberts. Roberts being the sole decision maker on whether Erik Farfan (plaintiff) receives a life-saving transplant seems plaintiff is UNWORTHY of one.

50. The TLC Committee decides whether prisoners leave the prison to receive health care at an outside location, such as hospital. This determination, and the way Oregon tracks it, reveals what the state sees as a major priority for prison health care: the budget, not the well-being of inmates. The state tracks how often prisoners receive outside healthcare as a "key performance measure." The goal, according to a 2022 publication by Oregon's Legislative policy and Research Office, is to keep the percentage of off-site care cases below 1 percent.

51. The word "committee is a bit of misnomer. Even though multiple people meet for the committee meetings, the decisions are ultimately made by Dr. Roberts alone.

52. Warren Roberts is adhering to keeping Erik Farfan as part of the 1 percent care cases by denying him his necessary transplant testing and transplant.

53. Erik Farfan continuing on dialysis is painful, stressful and guaranteed less life. Not only the quality of life is diminished but 40% of his life is forfeited because of continuing on dialysis.

54. Plaintiff knows that other inmates at TRCI have received kidney transplants and that the State of Oregon (ODOC) do transplants.

55. Plaintiff knows that the need for a medically necessary transplant constitutes a serious medical need.

56. Plaintiff knows that ODOC has DENIED, DELAYED, and INTERFERED with a doctor's order.

57. Plaintiff knows that ODOC's failure to provide Plaintiff with a medically necessary transplant constitutes deliberate indifference.

58. Plaintiff knows that failure to provide plaintiff with an organ transplant violates the Eighth Amendment prohibition against cruel and unusual punishment.

59. Plaintiff knows a transplant/transplant testing is serious in that it has been diagnosed by a physician as mandating treatment.

60. Plaintiff knows when a treating physician, Dr. Seth Thaler, Plaintiff's nephrologist, has recommended that a prisoner receive a life-saving transplant, prison official's refusal to provide such a procedure cannot be justified as a difference of opinion.

61. Plaintiff was written a doctor's order on January,23,2021.

62. Plaintiff's release date from incarceration is 4-03-2026.

63. Plaintiff, at the time of Dr. Seth Thaler order, had just over Five (5) years to serve on his sentence.

64. ODOC and TRCI TLC Committee should have made plaintiff available to OHSU Transplant Program for Transplant testing and eventual transplant.

65. ODOC/ ODOC TLC Board DELAYED testing at Plaintiff's peril.

66. Plaintiff knows after a doctor has prescribed a course of treatment prison officials manifest deliberate indifference by interfering with or refusing to provide an inmate with the prescribed treatment.

67. Plaintiff has been left to the less efficacious treatment and suffers the horrible symptoms associated with dialysis.

68. Plaintiff, doing dialysis, is guaranteed 40% LESS OF HIS LIFE because prison officials choose this less efficacious course of treatment.

69. Plaintiff has had talks with Charles Cox in the presence of Dr. Seth Thaler about his transplant status and progress. Charles Cox has both times led Plaintiff to believe, by his remarks, that the reason transplant testing was not progressing forward was because OHSU Transplant Program was not taking patients.

70. The actual reason Plaintiff has not begun his transplant testing is because Patrick Maney, NP had forgotten the referral even existed in January,23,2021 and never presented it.

71. Plaintiff's referral NEVER reached OHSU Transplant Program because the TLC Board did not approve it.

72. The year's that past because Patrick Maney, NP forgot to present his referral is additional years Plaintiff had to suffer.

73. By the absence of adequate medical treatment and proper care and attention by prison officials, Plaintiff's serious health condition of kidney failure and overall physical condition has deteriorated and is deteriorating. Plaintiff succumbs to prolonged spells of depression because of being denied transplant testing and eventual transplant. Not receiving transplant guarantees Plaintiff less life.

74. Plaintiff at the same time suffers a prevailing deep-seated anxiety over his condition and future.

**LEGAL STANDARDS REQUIRE PRISON SYSTEMS TO PRIORITIZE THE HEALTH AND WELL- BEING OF PRISONERS, EVEN IN CASES WHERE PROVIDING MEDICAL CARE MAY PRESENT LOGISTICAL OR FINCANCIAL CHALLENGES.**

*These* standards and principles include:

1. **Eighth Amendment of the U.S. Constitution:** The Eighth Amendment prohibits Cruel and unusual punishment, which includes the denial of necessary medical care to prisoners.

2. **Estelle v. Gamble (1976):** In this landmark Supreme Court case, the Court held that deliberate indifference to serious medical needs of prisoners violates the Eighth Amendment. The Court emphasized that prison officials have a constitutional obligation to provide medical care to inmates, regardless of logistical or financial challenges.

3. **Professional Ethical Standards:** Healthcare professionals, including those working within the prison    system, are bound by ethical standards that prioritize the health and well-being of patients. The American Medical Association's Code of Medical Ethics emphasizes the duty of physicians to provide competent medical care to all individuals, including prisoners.

4. **Federal Statutes and Regulations:** Federal Statues such as the Civil Rights of Institutionalized Persons Act (CRIPA) and the Americans with Disabilities Act (ADA) protect the rights of individuals in institutional settings, including prisons. These laws require prison systems to provide adequate medical care and accommodations to individuals with disabilities, regardless of logistical or financial challenges.

5. **State Laws and Regulations:** Many state laws have their own laws and regulations governing the provision of medical care to prisoners. These laws often reflect the same principles found in federal law, requiring prison systems to prioritize the health and well-being of inmates and provide necessary medical care, even in the face of logistical or financial challenges.

6. **Court Decisions and Legal Precedents:** Courts have consistently ruled in favor of prisoners in cases where prison officials have demonstrated deliberate indifference to serious medical needs. Legal precedents establish that prison systems have a duty to provide adequate medical care to inmates, and financial or logistical challenges do not excuse deliberate indifference. In summary, these standards underscore the fundamental principle that prisoners retain their constitutional rights to necessary medical care while incarcerated.

## THE CONSTITUTIONAL STANDARD

The Eighth Amendment provides that excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted. The cruel and unusual punishment clause of the Eighth Amendment controls the provision of health care to the incarcerated.

    **A.** Estelle v. Gamble: Deliberate Indifference to a Prisoner's Serious Medical Needs

The Estell Court nonetheless emphasized the government's obligation to provide medical care to those whom it is punishing by incarceration. Prior to deciding Estelle, the Court had held

repugnant to the Eighth Amendment punishments which are incompatible with the evolving standards of decency that mark the progress of a maturing society. In Estelle, the Court reasoned that the governments failure to provide adequate medical care to prisoners could result in torture or a lingering death or pain and suffering.

Serious Medical Needs: Courts rely on the diagnoses and prescribed treatment of a doctor or another health-care provider. Courts have uniformly held that a medical need is serious if it is one that has been diagnosed by a physician as requiring treatment. A medical professional, Erik J. Farfan's doctor has ordered a referral for transplant and transplant testing.

## V. EXHAUSTION OF ADMINISTRATIVE REMEDIES

75. Plaintiff ha timely exhausted all available administrative remedies prior to filing this complaint.

## VI. CAUSE OF ACTION
### CLAIM 1

76. Defendant ODOC TLC COMMITTEE Board were aware of plaintiff's serious medical need for kidney transplant testing and kidney transplant and adequate medical attention, but were deliberately Indifferent to plaintiff's need by persisting in an ineffective course of treatment and less efficacious Course of treatment which is outside the professional standards. The Defendant's deliberate Indifference to plaintiff's serious medical need is causing his health condition to deteriorate and is causing unnecessary pain and suffering, in violation of the Constitutional Eighth Amendment prohibition against cruel and unusual punishment.

### CLAIM 2

77. Defendant Patrick Maney, NP delayed, denied and interfered with Dr. Seth Thaler physician's order.

Patrick Maney, NP was aware of plaintiff's serious medical condition and need for medical care, but was deliberately indifferent to plaintiff's medical needs by failing to present plaintiff's physician's Ordered referral to the TLC Board in a timely manner, in effect, persisting in an ineffective course of treatment and less efficacious one, which is outside the limits of professional standards.

Patrick Maney, NP DELAYED Plaintiff's doctors order for over TWO (2) years. The defendant's deliberate indifference to plaintiff's serious medical need is causing his health to deteriorate and is causing unnecessary pain and suffering, in violation of the Constitutional Eighth Amendment prohibition against cruel and unusual punishment.

## CLAIM 3

78. Defendant Charles Cox is an official directly responsible for plaintiff's health care while on dialysis. Charles Cox has a professional obligation and duty to properly educate and provide knowledge to Plaintiff in regards to his health. Charles Cox denied, delayed, and interfered with Dr. Seth Thaler's Order and recommendation for transplant testing by misleading plaintiff and providing false Statements about his transplant status. Charles Cox, in an effort to convince plaintiff not pursue his Transplant testing lied about speaking to OHSU Transplant Program.

79. Charles Cox was aware of plaintiff's serious medical condition and need for kidney transplant testing and adequate medical attention but was deliberately indifferent to plaintiff's need by persisting in an ineffective course of treatment, which is outside the professional standards. The defendant's Deliberate indifference to plaintiff's serious medical need is causing his health to deteriorate and is Causing unnecessary pain and suffering, in violation of the Constitutional Eighth Amendment Prohibition against cruel and unusual punishment.

## CLAIM 4

### (42 U.S.C. 1983)

80. Plaintiff re-alleges all prior paragraphs as though fully set forth herein.

81. Defendant were deliberately indifferent to Erik J. Farfan's serious medical needs as follows:

82. **a.** By withholding medically necessary treatment and failing to provide medically and constitutionally Adequate treatment for Farfan's end stage renal failure;

83. **b.** By refusing to provide the treatment recommended by the provider ODOC contracts, Dr. Seth Thaler, with no bases for refusal;

84. **c.** In failing to provide the medically necessary treatment in a timely manner, to prevent the life-long Damage and deterioration suffered as a consequence;

85. The defendant's treatment of Farfan's violated his right to be free from cruel and unusual

Punishment under the Eighth Amendment of the United States Constitution.

86. As a result of Defendant's violation of Farfan's Constitutional rights, Farfan suffered a worsening of His end stage kidney disease as a result of the inadequate medical care currently provided by ODOC Dialysis TRCI dialysis unit.

87. Plaintiff is entitled to economical and non-economic damages against defendants in amount to be Determined at trial for violations of 42. U.S.C. 1983.

**Compensatory damages are to be deducted from the evidence and determined by a jury:**

88. As a direct and proximate result of the deliberate indifferent actions and breaches of the applicable Standards of medical care by the Defendants, Plaintiff Erik J. Farfan suffered Conscious pain and Suffering, and other damages.

89. As a direct and proximate result of the deliberate indifferent actions and breaches of the applicable Standards of medical care by the Defendants, by and through its nurses, employees, and medical Staff, resulting in major psychological pain.

90. Plaintiff brings this claim for the conscious pain and suffering and physical injuries, further medical issues, and other Damages that Plaintiff experienced from March, 2020 up until the time of this lawsuit, as direct and Proximate result of the deliberate indifference and breaches of the applicable standard of medical Care by the defendants, by and through its nurses, employees, and medical staff.

**In calculating the compensatory damages, they read as follows for plaintiff's pain and suffering:**

The severity of plaintiff's injury: Loss of life.

- Duration and permanence: The long periods of on-going pain and suffering the exacerbated Plaintiff's kidney failure and dialysis treatments.

- Impact on plaintiff's Daily Life: Plaintiff's diminished quality of life due to limited mobility without pain and suffering.

- Emotional Distress: Anxiety, depression and stress due to the helplessness of Plaintiff's condition and forced to suffer until this court grants remedy.

- Medical Treatment: There is absolutely potential for future medical needs.
- $500.00 a day multiplied by 1,095 days= $547,500 in total damages.

- **Punitive damage** of $1,500,000 for Patrick Maney, NP delaying and interfering with a doctor or by forgetting Plaintiff's referral and leaving him to suffer.

## CLAIM 5

### (Negligence-against Defendants ODOC)

Farfan re-alleges all other prior relevant paragraphs as set forth herein.
ODOC was negligent in providing care to Plaintiff as follows:

a.  By withholding medically necessary treatment, and failing to provide medically and constitutionally adequate treatment for Farfan's End Stage Kidney Failure.

b.  By refusing to provide treatment recommended by their own contracted provider, Dr. Seth Thaler, with no basis for refusal.

c.  In failing to provide the medically necessary treatment in a timely manner, to prevent the life-long damage and deterioration suffered as a consequence.

ODOC knew or should have known that failing to provide medically and constitutionally adequate treatment for Farfan"s End Stage Kidney Failure or provide effective testing and treatment and surgery would result in Farfan suffering physical harm and severe physical and mental pain and suffering.

ODOC owes Farfan a higher standard of care because of the nature of incarceration. As a reward of the State, ODOC manages all aspects of Farfan's health care, and decides when a request for medical appointment or transplant testing or transplant should be granted. Had Farfan been a free person, he would have sought the appropriate treatment immediately and had some form of treatment rendered. However, as an incarcerated person, when Farfan was referred by his nephrologist and recommended for transplant while in ODOC's facility his pleas for treatment were unmet. ODOC voluntarily took the custody of Farfan under the circumstances such as to deprive Farfan of normal opportunities for protection and created a non-

delegable duty to ensure that Farfan was able to access adequate medical care while incarcerated. ODOC did not meet its obligation to provide for "healthcare, including medical, dental, mental health care and pharmacy services, that complies with appropriate professional standards." OAR 291-124-0016(1)(c).

ODOC'S conduct was unreasonable in light of the risk of harm to Farfan. ODOC controls all aspects of Plaintiff's medical care. Farfan's End Stage Kidney Failure, transplant testing, and eventually transplant would have exponentially occurred at a quicker pace if ODOC could have simply followed the recommendations of Farfan's provider when recommended the transplant testing. Instead ODOC unreasonably disregarded Farfan's pleas for medical assistance concerning his kidney transplant testing and ignored a serious medical issue.

AS a consequence of ODOC's negligence, Farfan suffered physical harm and sever physical and mental pain and suffering. ODOC's failure to treat Farfan sooner is resulting in permanent damage to Farfan's body. He is likely to require future treatment as a result of ODOC negligence and suffer lon-term physical deterioration also as a result of ODOC's negligence. ODOC's conduct was a substantial factor in causing harm to Farfan. AS a result of ODOC's conduct, Farfan suffered economical and non-economical damages in an amount to be proved at trial.

## VIII. PRAYER FOR RELIEF

91. Wherefore, Plaintiff respectfully prays that this court enter an order:

92. Issuing **declaratory relief**, declaring that the acts and omissions of the defendants

Have violated Plaintiff's rights, and stating the defendant's duties with respect to

Those rights.

Issuing **injunctive relief,** commanding the defendants to (1) provide Plaintiff with an order for ODOC to comply with his doctor's order for transplant to begin with OHSU Transplant Team.

## Award Plaintiff Compensatory damages are to be deducted from the evidence And determined by a jury:

93. As a direct and proximate result of the deliberate indifferent actions and breaches of The applicable standards of medical care by defendants, Plaintiff Erik J. Farfan Suffered psychological injuries, physical injuries, conscious pain and suffering, and Other damages.

94. Plaintiff brings this claim for the conscious pain and suffering and psychological Injuries, physical injuries, further medical issues, and other damages that Plaintiff Experienced from March, 2020 up until the time of this lawsuit, as direct and Proximate result of the Deliberate indifference and breaches of the applicable Standard of medical care by the defendants, by and through its nurses, employees, And medical staff.

**In calculating the compensatory damages, they read as follows for Plaintiff's pain and suffering:**

- The severity of plaintiff's injury: Loss of life.

- Duration and permanence: The long periods of on-going pain and suffering the exacerbated Plaintiff's kidney failure and dialysis treatments.

- Impact on plaintiff's Daily Life: Plaintiff's diminished quality of life due to limited mobility without pain and suffering.

- Emotional Distress: Anxiety, depression and stress due to the helplessness of Plaintiff's condition and forced to suffer until this court grants remedy.

- Medical Treatment: There is absolutely potential for future medical needs.

- $500.00 a day multiplied by 300 days=$150,000 in total damages.

- **Punitive damage** of $1,000,000 for Patrick Maney, NP delaying and interfering with a doctor or by forgetting Plaintiff's referral and leaving him to suffer. Punitive damages against Warren Roberts and ODOC for failing to present Farfan's referral to TLC Committee.

Any other relief this Court may deem just and proper

Trial by jury is hereby demanded on all claims alleged herein, and the parties are hereby given notice, pursuant to Fed. R. Civ. P. 38(a)-(c).

## IX. VERIFICATION

Pursuant to 28 U.S.C. §1746, I, Erik J. Farfan, declare and verify, under penalty of perjury under the laws of the United States of America, that I have read the foregoing and that it is true and correct to the best of my knowledge and belief.    x _____

### Certificate of Service

I, Erik Farfan hereby certify that I have caused to be served to the below-named true and correct copies of the forgoing document via e-service.

Dated this 17ᵗʰ, day February of 2026

Erik J. Farfan.

X. _____

# CERTIFICATE OF SERVICE

**CASE NAME:** Farfan _____ v. W. Roberts et al _____

**CASE NUMBER:** (if known) _____

COMES NOW, Erik Farfan _____, and certifies the following:

That I am incarcerated by the Oregon Department of Corrections at Two Rivers Correctional Institution.  (TRCI)

That on the _____ day of _____, 20_____, I personally gave Two Rivers Correctional Institution's e-filing service a true copy OF THE FOLLOWING:

1. Federal 1983 Complaint
2. Civil Cover Sheet
3. In Form Paupers
4. Order to Proceed without fees
5.
6.
7.
8.
9.

_____
(Signature)

Print Name: Erik Farfan _____

SID #: 18059264 _____